Randall B. Bateman (USB 6482)
BATEMAN IP
299 South Main Street, Suite1300
Salt Lake City, UT 84111
Tel: (801) 533-0320
Email: rbb@batemanip.com; mail@batemanip.com

*Attorney for Plaintiffs The Wizard Trades, LLC and Michael Hubbs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE WIZARD TRADES, LLC, a Utah Limited Liability Company, and MICHAEL HUBBS, an individual,<br><br>            Plaintiff,<br>    vs.<br><br>CHARLTON LACHASE, an individual, ANDRA RUSH, an individual, STEVEN DUHON, an individual, and BRIAN HERTNEKY, and individual,<br>.<br>            Defendants. | **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS CHARLTON LACHASE**<br><br>Case No. 2:23-cv-00207-DBB-DAO<br><br>Judge David Barlow<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiffs, The Wizard Trades, LLC, and Michael Hubbs, hereby oppose the Motion to Dismiss Charlton Lachase.

## **BACKGROUND**

Plaintiff The Wizard Trades, LLC ("TWT"), is a Utah limited liability company having a business address in Salt Lake County, Utah. Plaintiff Michael Hubbs ("Hubbs") is the owner of TWT and also lives in Salt Lake County, Utah. In July 2022, Defendant Charlton Lachase ("Lachase") contacted Hubbs and purchased access to a 21-video training course on online trading. Long before Lachase reached out to Hubbs in Utah to purchase access training course,

Lachase was aware that Hubbs resided in Utah.

Lachase initially bragged that he was making large returns. However, several months later Lachase allegedly suffered a substantial loss. Lachase demanded a refund of his money for purchasing access to the videos. Lachase then threatened to provide everyone access to TWT's materials – claiming that he was not bound by the terms of TWT's terms of service. Lachase further posted on social media that the TWT program was fraudulent, and that Micheal Hubbs was a scam and a con artist. Lachase specifically stated that his goal was to "try and destroy Michael Hubbs."

Despite the fact that this entire dispute is related to Lachase's reaching into Utah, purchasing the product of a Utah company, and then specifically setting out to harm the Utah company and its owner, Lachase seeks to dismiss the lawsuit falsely claiming that he had no idea that either of the Plaintiffs was from Utah.

<u>RESPONSE TO LACHASE'S STATEMENT OF FACTS</u>

1. Mr. Lachase is a resident of Fort Pierce, Florida. *See* FAC, ¶ 3, Dkt.8.

Response: Undisputed.

2. Plaintiff The Wizard Trades ("TWT") is a Utah entity that provides instructional video courses online. *See id.*, ¶¶ 11, 12, 14.

Response: Undisputed

3. Plaintiffs' Complaint alleges that this Court has personal jurisdiction over the defendants "as the acts alleged herein occurred in this District and Defendants have directed their comments into this state." *Id.*, ¶ 9.

Response: Undisputed. While the Amended Complaint alleges that the Court has

personal jurisdiction as indicated, the Amended Complaint also identified that Lachase contacted TWT and Hubbs in Utah and entered into an agreement to obtain access to TWT's course materials. The allegations in the Amended Complaint spring from Lachase's violations of the terms of use and his attempts to retaliate against Hubbs for refusing to give him a refund in violation of the terms of use. See, e.g., Dkt. 8, ¶¶ 16, 26-29.

4. At the time he purchased TWT's online instructional video course, Mr. Lachase did not know TWT was based in Utah. *See* Decl. of Charlton Lachase, ¶ 5, filed concurrently herewith.

Response: Disputed. Lachase had multiple contacts with TWT and Hubbs in which it was identified that the Plaintiffs were based in Utah. For example, more than four months before Lachase contacted Hubbs to purchase access to the training course, Lachase and Hubbs had a conversation regarding a new car which Hubbs purchased. Lachase asked Hubbs if Hubbs was driving the car back to Hubbs' home in Utah.

5. In fact, Mr. Lachase did not know that TWT was a Utah company until this lawsuit was served upon him in Florida. *Id.*, ¶ 6

Response: Disputed. Lachase was advised that Plaintiffs were from Utah at least as early as July of 2022, seven months before Lachase made any of his defamatory remarks.

6. Nor did Mr. Lachase know that Plaintiff Michael Hubbs was a resident of Utah until this lawsuit was served upon him. *Id.*, ¶ 7.

Response: Disputed. It is difficult to see how this statement can be made in good faith. Not only did Lachase ask whether Hubbs was driving his car back to Hubb's home in Utah in February of 2022, in July 2022 Lachase requested Hubbs to fly to Florida to give a presentation

to some of Lachase's associates. Lachase paid for Hubbs' flight from Salt Lake City to Tampa, Florida and paid for Hubbs' hotel. After the event, Lachase inquired about Hubbs putting on a 5-day event in Utah for Lachase and his associates. Lachase has known that Hubbs is a resident of Utah since at least February of 2022.

6. Mr. Lachase has never visited Utah, has never intentionally performed any act in Utah, and did not purposely or intentionally direct the complained-of statements into Utah. *Id.*, ¶ 8.

Response: Disputed. Mr. Lachase specifically reached out to Utah to enter into an agreement with a Utah company and obtain the materials which formed the basis of the dispute. He then repeatedly reached out to Utah to get Hubbs to put on seminars for his associates. He then specifically targeted his defamatory statements at TWT and Hubbs knowing that the harm would be felt in Utah.

7. Plaintiffs allege that Mr. Lachase "has made numerous claims accusing TWT and its owner Michael Hubbs of being fraudulent and selling a scam." *See* FAC, ¶ 28, Dkt.8.

Response: Undisputed.

8. Plaintiffs allege that Mr. Lachase "stated that: 'I'm ready to go into SYL (fb group with tons of people) to share....to warn everyone Michael Hubbs' course for $6,500...he's very manipulative... You're right that Michael Hubbs in a SCAM. He's a very bad person. I will get in SYL to try and destroy Michael Hubbs.'" *See id.*, ¶ 29.

Response: Undisputed.

9. Plaintiffs allege that Mr. Lachase "further stated: 'I will share everything of his course materials from lesson 1 to lesson 21 FREE FOR EVERYONE, EVERYTHING FREE

hahahaha. I haven't signed any contract, means I can do anything… hahaha. Freedom of speech.'" *See id.*, ¶ 30.

Response: Undisputed.

## PLAINTIFFS' ADDITIONAL FACTS

1. Lachase has known that Hubbs resides in Utah since at least as early as February of 2022. Declaration of Michael Hubbs, ¶ 3.

2. In July 2022 Lachase reached out to Hubbs in Utah to gain access to TWT's online training materials and paid TWT for the access. Id. at ¶ 4.

3. In July of 2022, Lachase also contacted Hubbs and asked Hubbs to come to Florida to give a presentation on online trading to Mr. Lachase and some of his associates. *Id.* at ¶ 5.

4. Hubbs and Lachase discussed Hubbs needing to fly from his home in the Salt Lake City area to an airport in Florida. Mr. Lachase paid for Mr. Hubbs' airline ticket. Id. at ¶ 6.

5. Lachase picked Hubbs up from the airport and drove him to the location of the meeting. During the drive Lachase asked Hubbs numerous questions about living in Utah and even indicated that he might want to move to Utah. Id. at. ¶ 7.

6. A few days after the meeting Lachase asked Hubbs to host a 5-day seminar in Utah to further teach Lachase and his associates about online trading. Hubbs Decl. at ¶ 8.

7. Lachase initially bragged about how successful he was trading and shared numerous of Hubbs' posts about trading. Id. at ¶ 9.

8. In early 2023 Lachase claimed to have suffered a major loss and contacted Hubbs in Utah, demanding a refund of his payment to TWT. Id. at ¶10.

9. When Hubbs reminded Lachase that there were no refunds, Lachase threatened to provide copies of TWT's materials to the public without payment in violation of the terms of service. Id. at ¶ 10.

10. Lachase also started publishing statements on social media accusing TWT's program of being fraudulent and claiming that Hubbs was a scam and a con artist. Hubbs Decl. ¶ 11.

## ARGUMENT

All of the conduct alleged against Lachase in the Amended Complaint is related to his purchase of access to a video training series from a Utah company through its owner, who is also a resident of Utah. Lachase was aware that TWT and Hubbs were from Utah long before he requested access to TWT's materials and paid TWT to gain access. Having intentionally entered into an agreement with a Utah company to use the Utah company's goods, Lachase cannot now object to submitting the jurisdiction of the Utah court.

A.   THIS COURT HAS JURISDCITION

Jurisdiction is proper in this District both under pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332 and 1338, as the amount in controversy exceeds $75,000 and the Complaint includes a claim for Copyright infringement. Additionally, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they are related to the claim of this action within the Court's original jurisdiction.

B.     THIS COURT HAS SPECIFIC JURISDICTION OVER LACHASE

In determining whether the Court has jurisdiction over Lachase, the Court first looks to the scope of the State's long-arm statute. The court may exercise personal jurisdiction over an out-of-state resident when the plaintiff establishes that jurisdiction is proper under Utah's long-arm statute and that exercising jurisdiction would not offend the due process clause of the Fourteenth Amendment. *Soma Med. Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir. 1999). Utah's long-arm statute provides, in relevant part, that:

> any person or personal representative of the person, whether or not a citizen or resident of this state, who, in person or through an agent, does any of the following enumerated acts is subject to the jurisdiction of the courts of this state as to any claim arising out of or related to:
>
> (1) the transaction of any business within this state;
>
> (2) contracting to supply services or goods in this state; [or]
>
> (3) the causing of any injury within this state whether tortious or by breach of warranty . . .

Utah Code Ann. § 78B-3-205 (2012).

The Utah long-arm statute is co-extensive with due process, *see* Utah Code Ann. § 78B-3-201 (long-arm provision extends "to the fullest extent permitted by the due process clause"), so the court focuses its general jurisdiction analysis on whether the defendant has certain minimum contacts with the forum such that maintaining the suit against the non-resident defendant would "not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

To determine whether specific jurisdiction exists, the court must analyze two factors: whether there is a sufficient nexus between the plaintiff's claims and the defendant's acts or

contacts; and whether the application of the long-arm statute satisfies the requirements of federal due process. *Soma Med. Int'l,* 196 F.3d at 1298. Specific jurisdiction is appropriate where the controversy "is related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

In the present case, Plaintiffs TWT and Hubbs assert causes of action against Lachase for Copyright Infringement, Libel and Slander and Tortious Interference with Economic Relations (Dkt. 8). Each of these is related to Lachase's contacts with the state of Utah.

In July 2022, Lachase contacted Hubbs to gain access to TWT's materials. Despite Lachase's claims to the contrary, Lachase's own text messages show that he knew Hubbs was from Utah months before he contacted Hubbs to purchase the training program.

That same month, Lachase contacted Hubbs about giving a presentation on online trading to Lachase and a number of his associates in Florida. Hubbs indicated that he would be willing to travel to Florida to give the presentation and Lachase paid for Hubbs' ticket from Salt Lake City to Tampa, Florida. Lachase picked up Hubbs at the airport and the two discussed what it was like for Hubbs to live in Utah. At the presentation Lachase indicated that Hubbs was from Utah. Shortly after the presentation, Lachase again contacted Hubbs and inquired about Hubbs giving a 5-day seminar on online trading to Lachase and his associates in Utah. For months Lachase actively promoted Hubbs and TWT's program on his social media accounts.

Sometime in early 2023, however, Lachase apparently made some bad investment choices and claimed to lose a substantial amount of money online trading. Lachase demanded a refund of his payment to TWT. When Hubbs refused, Lachase provided copies of TWT's content to third parties – including Defendants Brian Hertneky and Steven Duhon – and accused TWT's content of being fraudulent. Lachase further claimed that Hubbs was a scam and a con artist and specifically stated that it was his goal to "try and destroy Hubbs."

The alleged conduct is directly related to Lachase's contacts with the state of Utah. But for Lachase reaching into Utah and purchasing access to TWT's product, there would have been no demand for a refund, no copyright infringement and no false and disparaging statements in an attempt to destroy the Plaintiffs.

1. Specific Jurisdiction if Appropriate For the Copyright Claims

Specific jurisdiction is appropriate for the copyright claim because Lachase purposefully directed his actions at the state of Utah. Lachase had no access to TWT's copyrighted materials until Lachase reached into Utah to obtain access to those materials from a Utah company. As noted above, Lachase had been aware for months prior to contacting Hubbs to obtain access to the videos that Hubbs lived in Utah. Lachase knew or should have known that by copying copyrighted materials that he acquired from Utah that he was consenting to be sued in Utah. *Grady v. Nelson*, 2014 U.S. Dist. LEXIS 172759, *11 (D. Colo., December 15, 2014("By redistributing his downloads in direct violation of the Terms of Use, Defendant has subjected himself to a potential cause of action in this state's courts.").

In evaluating whether the plaintiff has made such a showing of contacts with the forum, the Court must accept as true all well-pleaded factual allegations in the plaintiff's complaint and any factual disputes must be resolved in the plaintiff's favor. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The complaint alleges that Lachase reached into Utah to acquire access to the training program and then targeted the Utah residents when they refused to give him a refund.

Hubb's declaration and the attachment thereto demonstrate that Lachase was aware that the TWT materials he purchased access to were from Utah many months before he started making copies and sending them to third parties. Thus, jurisdiction is present under the copyright claim.

### 2. The Court has Specific Jurisdiction over The Defamation and Tortious Interference Claims

In the present case there can be no dispute that Lachase was specifically directing his actions to cause harm in Utah. Lachase even went so far as to publicly state that he was trying to destroy Hubbs a year after Lachase demonstrated his awareness that Hubbs resides in Utah. To establish minimum contacts with the forum state, the defendant must have "purposefully directed its activities at residents of the forum state." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (citation omitted). The purposeful direction inquiry "can appear in different guises." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008). But, at bottom, the requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475 (citations omitted).

Here the Plaintiffs can satisfy the purposeful direction requirement by applying the harmful effects test set forth by the Supreme Court in *Calder v. Jones* and applied by the Tenth Circuit in *Dudnikov*, 514 F.3d at 1071-72 (citing *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)). The test requires three elements: (1) the defendant commits an intentional act, (2) the defendant's action is expressly aimed at the forum state, and (3) the defendant knows that the brunt of the injury will be felt in the forum state. *Id.* at 1072. But as the Tenth Circuit has explained, the "expressly aimed" prong focuses on a defendant's intentions— what was the "'focal point' of [the defendant's] purposive efforts." *Dudnikov*, 514 F.3d at 1075 (quoting *Calder*, 465 U.S. at 789). A court should not solely "focus on the physical direction" of communications by the defendant but should also consider where the defendant aimed the "ultimate purpose" of her actions. *Id.* In the present case, Lachase has made it clear where he aimed the "ultimate purpose" of his actions. Lachase was specifically attempting to destroy a resident of Utah after he was unable to obtain a refund for the money he spent purchasing access to the materials of that person's Utah company. Lachase was specifically targeting his defamatory comments so the harm would be felt in Utah.

While Lachase now claims that he was unaware that Hubbs and TWT were based in Utah, his own communications demonstrate this to be false. In February of 2022, Lachase and Hubbs texted about Hubbs' new car. Declaration of Michael Hubbs, ¶ 3 and Attachment 1. Lachase specifically asked if Hubbs was driving the new car back to his home in Utah. This was four months before Lachase contacted Hubbs about purchasing access to the online trading course.

11

Four months later Lachase paid for Hubbs to fly from Salt Lake City to Tampa to put on an event for Lachase and his friends and then asked Hubbs to put on a longer event in Utah. Lachase's declaration claiming that he did not know Plaintiffs were from Utah is self-serving and lacking credibility. Lachase was aware that Plaintiffs were from Utah at least 12 months prior to distributing copies of the training program and specifically targeting TWT and HUBBs with allegations that they were fraudulent, scams and that Hubbs was a con artist. Lachase knew exactly where the damage of his conduct would be felt. Lachase's goal was to interfere with the ability of a Utah company to enter into economic relations with third parties – a goal at which he has been successful. Requiring Lachase to defend against the claims in a location where he specifically meant to cause harm would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

### 3. The Court Should Exercise Pendent Jurisdiction

Pendent personal jurisdiction "exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim . . . and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002). This is permitted so long as all claims arise from the same facts that the claims for which the court does have proper personal jurisdiction. *Id.* The Tenth Circuit has looked at whether the claims arise from the same common nucleus of operative fact. *Id.*

In the present case, each of the claims arises from the same common nucleus of operative facts. Lachase became upset that Plaintiffs would not give him a refund and tried to harm Plaintiffs by distributing copies of Plaintiffs' videos and making false and defamatory claims against the Plaintiffs. It would be appropriate if the Court determines that specific jurisdiction is inadequate for one of the causes of action to exercise pendent jurisdiction over that cause of action due to the common facts at the heart of each.

### C.   THE AMENDED COMPLAINT STATES A CLAIM AGAINST LACHASE

Under Fed. R. Civ. P. 12(b)(6), a district court may dismiss a complaint for failure to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir. 1989). "If as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' a claim must be dismissed." *Neitzke v. Williams,* 490 U.S. 319, 327, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)).

If the plaintiff has pled facts that would support a legally cognizable claim for relief, a motion to dismiss should be denied. *See id.* In evaluating a 12(b)(6) motion to dismiss, "all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Sutton v. Utah State Sch. for Deaf and Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999).

Fed. R. Civ. P. 12(b)(6) does not provide a procedure for resolving a contest about the facts or the merits of the case. Thus, one must read Fed. R. Civ. P. 12(b)(6) in conjunction with Fed. R. Civ. P 8(a), which sets forth the requirements for pleading a claim in federal court. Federal R. Civ. P 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement need not contain detailed facts, but it must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 335 U.S. at 47. A plaintiff is not required to state precisely each element of the claim. *See* 5 Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, at 154-59 (1990). Nonetheless, a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir. 1988). Allegations of fraud or mistake are governed by the stricter requirements of Fed. R. Civ. P. 9(b), which requires that "the circumstances of fraud or mistake shall be stated with particularity."

    1. The Amended Complaint States a Claim for Copyright Infringement

Copyright infringement requires that the plaintiff prove two element: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Id.* (quoting *Feist Publ'ns Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)) (internal quotation marks omitted); *see also Enter. Mgmt. Ltd., Inc. v. Warrick*, 717 F.3d 1112, 1117 (10th Cir. 2013) ("There are two elements to a copyright infringement claim; a plaintiff must show both ownership of a valid copyright, and copying of protectable constituent elements of the work." (citations omitted)). The Amended Complaint

14

clearly alleges that Hubbs is the owner of the Copyright Registration for the materials, that Hubbs as notified the public that the materials are protected by copyright and that, despite being aware of Hubb's copyright claims, Defendants have made unauthorized copies of all of the content in the materials and distributed it on the internet. Amended Complaint (Dkt. 8, ¶¶ 48-52). Therefore, the Amended Complaint states a claim for copyright infringement.

2. The Libel and Slander Cause of Action States a Claim

Utah Code Ann. § 45-2-2 (2018) defines libel as a malicious defamation, expressed either by printing or by signs or pictures or the like, and slander as any libel communicated by spoken words. "To state a claim for defamation, [a plaintiff] must show that [the defendant] published the statements concerning him [or her], that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage." *West v. Thomson Newspapers*, 872 P.2d 999, 1007-08 (Utah 1994). There is no Utah law directly requiring that the complaint also allege with complete specificity when, where, to whom, or by whom, the alleged defamatory statements were made in order to withstand a motion to dismiss for failure to state a claim. *See Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795, 800 (D. Utah 1988) (acknowledging there is no controlling Utah law requiring a complaint to allege when, where, and to whom defamatory statements have been made).

A motion for a more definite statement is available if a defendant feels it needs a more detailed recitation of a plaintiff's claim before it can respond intelligently. *See* Utah R. Civ. P. 12(e); *Whipple v. American Fork Irrigation Co.*, 910 P.2d 1218, 1222 n.3 (Utah 1996) (noting

"that when a complaint states a claim in general language but the factual allegations are so vague and ambiguous that the defendant cannot draft an answer, the proper course of action is to move for a more definite statement under rule 12(e), not to move for dismissal."

In the present case, the Complaint sets forth facts showing Plaintiffs plausible claim for defamation. The Complaint indicates that "Lachase has made numerous claims accusing TWT and its owner Michael Hubbs of being fraudulent and selling a scam." (Dkt. 8, ¶ 28. "You're right that Michael Hubbs is a SCAM." *Id.* at ¶ 29. "Lachase and the other defendants have set out to damage the reputation of Hubbs and TWT by claiming that Hubbs and TWT are engaging in fraud and that they are scamming people." *Id.* at 37. "Each of the defendants has posted false and defamatory statements about Plaintiffs in an effort to discourage people from dealing with Plaintiffs." *Id.* at 38. "On information and belief, Defendants have conspired together in an attempt to damage Plaintiffs' reputations and damage Michael Hubbs." (Dkt. 8, at ¶ 39). "The false statements made by Defendants were made maliciously and with complete disregard for the rights of TWT and Hubbs." *Id.* at ¶ 46. "Defendants have made statements of fact against TWT and Hubbs, including, but not limited to, that TWT is a scam and that Hubbs is a scammer and engaged in fraud." *Id.* at 55. "Defendants have also accused Hubbs of being a con artist." *Id.* at 56. "Defendants' statements were published on social media, including FACEBOOK." *Id.* at 57. "The statements made by Defendants were false." *Id.* at 58. "The statements about Hubbs and TWT are targeted to cause damage to Plaintiffs in Utah." *Id.* at 60. "The statements were not privileged." *Id.* at 62. "On information and belief, the actions of the Defendants have cost Hubbs in excess of $200,000." Id. at 64. Moreover, by calling Hubbs a scam, a scammer and a con artist, Lachase engaged in defamation per se. *Jacob v. Bezzant*, 2009 UT 37, ¶ 26, 212 P.3d

16

535 (defamation per se includes allegations of "conduct which is incongruous with the exercise of a lawful business, trade, profession, or office."); *Malouf v. Metropolitan Life Ins. Co.,* 75 Utah 175, 187 (1929) ("false and defamatory matter calculated to do harm, and published of and concerning another's trade, profession, or employment, is libelous per se.").

Assuming that the allegations are true, the allegations go well beyond simply showing that Plaintiffs have a plausible claim. In light of the allegations, it cannot be said that it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" *Neitzke v. Williams,* 490 U.S. 319, 327, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989). Should the Court determine that additional detail is needed as to Lachase's false and defamatory comments, it is requested that Plaintiffs be provided with leave to amend the Amended Complaint to provide the date, social media outlet and exact language of Lachase's defamatory statements.

### 3. The Tortious Interference Cause of Action States a Claim

1. "In order to win a tortious interference claim under Utah law, a plaintiff must . . . prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to the plaintiff." *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553 (quotation simplified). The first element is clearly shown in the Amended Complaint, as it was Lachase's goal to "destroy Michael Hubbs." (Dkt. 8, ¶ 29). Lachase's actions were by improper means, including illegally copying the video series and placing it on the internet (Id. at 50) and making false claims that TWT was promoting a scam or a fraud and that the owner of TWT was a scam and a con artist. (Id. at ¶

75). Lachase's actions have cost Plaintiffs over $200,000. (Id. at ¶¶ 53, 64). Thus, Plaintiffs have set forth a plausible claim of tortious interference with economic relations.

While Plaintiffs believe that the Complaint has more than sufficient detail to comply with Rule 8 of the Federal Rules of Civil Procedure, in the event the Court disagrees, it is requested that Plaintiffs be given leave to add additional detail as to the specific actions of Lachase supporting the claims against him.

### D. CONCLUSION

The Amended Complaint sets forth three causes of action against Lachase and states a claim as to each by identifying Lachase's tortious conduct meeting each element of the claims. Therefore, the Motion to Dismiss Lachase should be denied.

Respectfully submitted this 11th day of September 2023.

        BATEMAN IP

        /s/ Randall B. Bateman
        Randall B. Bateman

        *Attorney for Plaintiffs The Wizard Trades, LLC and Michael Hubbs*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS CHARLTON LACHASE** served on Defendants on September 11, 20233, as follows:

Steven Duhon
3801 W SPRING CREEK PKWY APT 2122
PLANO, TX 75023

Brian Hertneky – via CM/ECF

Charlton Lachase  - via CM/ECF

Andra Rush – via CM/ECF

/s/Randall B. Bateman