Adam Bondy, USB #14423
Hannah Ector, USB #17980
Mindy Kidd, USB #18032
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
abondy@parsonsbehle.com
hector@parsonsbehle.com
mkidd@parsonsbehle.com
ecf@parsonsbehle.com
*Attorneys for Defendant Charlton Lachase*
Limited Appearance

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE WIZARD TRADES, LLC; and MICHAEL HUBBS,<br><br>Plaintiffs,<br><br>vs.<br><br>CHARLTON LACHASE, ANDRA RUSH, STEVEN DUHON, and BRIAN HERTNEKY,<br><br>Defendant. | **REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANT CHARLTON LACHASE**<br><br>Case No. 2:23-cv-00207-DAO<br><br>Magistrate Judge Daphne A. Oberg |

Pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Charlton Lachase ("**Mr. Lachase**"), by and through undersigned counsel, hereby submits the following Reply in Support of his Motion to Dismiss. For the reasons set forth in the Motion to Dismiss and supported hereby, the First Amended Complaint ("**FAC**") should be dismissed as to Mr. Lachase.

# INTRODUCTION

In their Opposition to Mr. Lachase's Motion to Dismiss ("**Opp'n**"), Dkt.60, Plaintiffs appear to argue that, because Mr. Lachase purportedly knew that Mr. Hubbs resided in Utah, he necessarily directed his activities and comments into Utah such that this Court can exercise personal jurisdiction over Mr. Lachase. Such a conclusion violates both logic and the law.

The standard Plaintiffs must meet is clear. "[T]hey must establish . . . not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state*." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1077 (10th Cir. 2008) (emphasis in original). Plaintiffs point to no case in which knowledge of an individual plaintiff's state of residence was sufficient to satisfy both of these elements and establish personal jurisdiction.

## REPLY TO PLAINTIFFS' RESPONSE TO STATEMENT OF FACTS[1]

*4. At the time he purchased TWT's online instructional video course, Mr. Lachase did not know TWT was based in Utah. See Decl. of Charlton Lachase, ¶ 5, filed concurrently herewith.*

***Response***: *Disputed. Lachase had multiple contacts with TWT and Hubbs in which it was identified that the Plaintiffs were based in Utah. For example, more than four months before Lachase contacted Hubbs to purchase access to the training course, Lachase and Hubbs had a conversation regarding a new car which Hubbs purchased. Lachase asked Hubbs if Hubbs was driving the car back to Hubbs' home in Utah.*

**Reply:** Whether Mr. Lachase knew that Plaintiff Hubbs had a home in Utah is not the same as knowing that his company, TWT, was located or based in Utah. Even assuming Mr. Lachase knew both Hubbs and TWT were based in Utah, Plaintiffs fail to allege any facts that would demonstrate Mr. Lachase purposely directed his actions at an audience in Utah. Plaintiffs therefore fail to meet their burden of demonstrating that this Court can exercise personal jurisdiction over Mr. Lachase.

---

[1] Mr. Lachase notes at the outset that this is not a motion for summary judgment and that many of the purported factual disputes Plaintiffs attempt to raise are irrelevant to the issues at hand. Notwithstanding this position, Mr. Lachase replies to each fact Plaintiff purports to dispute as follows:

> *5. In fact, Mr. Lachase did not know that TWT was a Utah company until this lawsuit was served upon him in Florida.*
>
> **Response**: *Disputed. Lachase was advised that Plaintiffs were from Utah at least as early as July of 2022, seven months before Lachase made any of his defamatory remarks.*

**Reply:** See Reply to SOF ¶ 4.

> *6. Nor did Mr. Lachase know that Plaintiff Michael Hubbs was a resident of Utah until this lawsuit was served upon him.*
>
> **Response:** *Disputed. It is difficult to see how this statement can be made in good faith. Not only did Lachase ask whether Hubbs was driving his car back to Hubb's home in Utah in February of 2022, in July 2022 Lachase requested Hubbs to fly to Florida to give a presentation to some of Lachase's associates. Lachase paid for Hubbs' flight from Salt Lake City to Tampa, Florida and paid for Hubbs' hotel. After the event, Lachase inquired about Hubbs putting on a 5-day event in Utah for Lachase and his associates. Lachase has known that Hubbs is a resident of Utah since at least February of 2022*

**Reply**: Mr. Lachase recognizes that this Court must assume the truth of Plaintiffs' allegations. Even if these allegations are true, all they show is Mr. Lachase knew at some point in 2022 that Hubbs resided in Utah. Plaintiffs fail to allege any facts that would demonstrate Mr. Lachase purposely directed his actions at an audience in Utah. Plaintiffs therefore fail to meet their burden of demonstrating that this Court can exercise personal jurisdiction over Mr. Lachase.

> *7[2]. Mr. Lachase has never visited Utah, has never intentionally performed any act in Utah, and did not purposely or intentionally direct the complained-of statements into Utah.*
>
> **Response**: *Disputed. Mr. Lachase specifically reached out to Utah to enter into an agreement with a Utah company and obtain the materials which formed the basis of the dispute. He then repeatedly reached out to Utah to get Hubbs to put on seminars for his associates. He then specifically targeted his defamatory statements at TWT and Hubbs knowing that the harm would be felt in Utah.*

**Reply:** Even assuming the truth of the argument that Mr. Lachase knew the harm from his alleged statements would be felt in Utah, Plaintiffs fail to allege any facts that would demonstrate Mr. Lachase purposely directed his actions at an audience in Utah. Plaintiffs therefore fail to meet their burden of demonstrating that this Court can exercise personal jurisdiction over Mr. Lachase.

---

[2] Plaintiffs mistakenly refer to this a fact number 6.

3

4883-0691-2897.v2

## RESPONSES TO PLAINTIFFS' ADDITIONAL FACTS

None of Plaintiffs' additional facts are sufficient to demonstrate that this Court can exercise personal jurisdiction over Mr. Lachase. What the parties discussed months before Mr. Lachase's alleged actions, and whether he knew at some point that Plaintiff Hubbs lived in Utah are immaterial to whether he purposely directed his alleged activities to an audience in Utah.

1. *Lachase has known that Hubbs resides in Utah since at least as early as February of 2022.*

**Response:** Even assuming the truth of this statement, Plaintiffs fail to allege any facts that would demonstrate Mr. Lachase purposely directed his actions at an audience in Utah. Plaintiffs therefore fail to meet their burden of demonstrating that this Court can exercise personal jurisdiction over Mr. Lachase.

2. *In July 2022 Lachase reached out to Hubbs in Utah to gain access to TWT's online training materials and paid TWT for the access.*

**Response:** Undisputed.

3. *In July of 2022, Lachase also contacted Hubbs and asked Hubbs to come to Florida to give a presentation on online trading to Mr. Lachase and some of his associates.*

**Response:** Even assuming the truth of this statement, Plaintiffs fail to allege any facts that would demonstrate Mr. Lachase purposely directed his actions at an audience in Utah. Plaintiffs therefore fail to meet their burden of demonstrating that this Court can exercise personal jurisdiction over Mr. Lachase.

4. *Hubbs and Lachase discussed Hubbs needing to fly from his home in the Salt Lake City area to an airport in Florida. Mr. Lachase paid for Mr. Hubbs' airline ticket.*

**Response:** Even assuming the truth of this statement, Plaintiffs fail to allege any facts that would demonstrate Mr. Lachase purposely directed his actions at an audience in Utah. Plaintiffs therefore fail to meet their burden of demonstrating that this Court can exercise personal jurisdiction over Mr. Lachase.

5. *Lachase picked Hubbs up from the airport and drove him to the location of the meeting. During the drive Lachase asked Hubbs numerous questions about living in Utah and even indicated that he might want to move to Utah.*

4883-0691-2897.v2

**Response:** Even assuming the truth of this statement, Plaintiffs fail to allege any facts that would demonstrate Mr. Lachase purposely directed his actions at an audience in Utah. Plaintiffs therefore fail to meet their burden of demonstrating that this Court can exercise personal jurisdiction over Mr. Lachase.

6. *A few days after the meeting Lachase asked Hubbs to host a 5-day seminar in Utah to further teach Lachase and his associates about online trading.*

**Response:** Even assuming the truth of this statement, Plaintiffs fail to allege any facts that would demonstrate Mr. Lachase purposely directed his actions at an audience in Utah. Plaintiffs therefore fail to meet their burden of demonstrating that this Court can exercise personal jurisdiction over Mr. Lachase.

7. *Lachase initially bragged about how successful he was trading and shared numerous of Hubbs' posts about trading.*

**Response:** Even assuming the truth of this statement, Plaintiffs fail to allege any facts that would demonstrate Mr. Lachase purposely directed his actions at an audience in Utah. Plaintiffs therefore fail to meet their burden of demonstrating that this Court can exercise personal jurisdiction over Mr. Lachase.

8. *In early 2023 Lachase claimed to have suffered a major loss and contacted Hubbs in Utah, demanding a refund of his payment to TWT.*

**Response:** Even assuming the truth of this statement, Plaintiffs fail to allege any facts that would demonstrate Mr. Lachase purposely directed his actions at an audience in Utah. Plaintiffs therefore fail to meet their burden of demonstrating that this Court can exercise personal jurisdiction over Mr. Lachase.

9. *When Hubbs reminded Lachase that there were no refunds, Lachase threatened to provide copies of TWT's materials to the public without payment in violation of the terms of service.*

**Response:** Even assuming the truth of this statement, Plaintiffs fail to allege any facts that would demonstrate Mr. Lachase purposely directed his actions at an audience in Utah. Plaintiffs therefore fail to meet their burden of demonstrating that this Court can exercise personal jurisdiction over Mr. Lachase.

10. *Lachase also started publishing statements on social media accusing TWT's program of being fraudulent and claiming that Hubbs was a scam and a con artist.*

**Response:** Even assuming the truth of this statement, Plaintiffs fail to allege any facts that would demonstrate Mr. Lachase purposely directed his actions at an audience in Utah. Plaintiffs therefore fail to meet their burden of demonstrating that this Court can exercise personal jurisdiction over Mr. Lachase.

# ARGUMENT

A. **Where Plaintiffs Fail to Demonstrate that Mr. Lachase Purposely Directed the Alleged Conduct at Utah, the Exercise of Specific Jurisdiction Over Mr. Lachase Would Be Improper.**

Plaintiffs seem to agree that only specific jurisdiction is at issue for purposes of this Motion. It bears repeating that "[i]n the absence of general jurisdiction, the court turns to an analysis of specific jurisdiction, the first element of which is the minimum contacts analysis." *Celtig*, 347 F. Supp. 3d at 983. "A court may find the necessary minimum contacts if: (1) the defendant 'purposefully directed its activities at residents of the forum state,' and (2) the plaintiff's injuries 'arise out of the defendant's forum-related activities.'" *Id.* (quoting *Old Republic Ins. Co.*, 877 F.3d at 904).

Plaintiffs argue that Mr. Lachase's alleged conduct is directly related to his contacts with Utah because "[b]ut for Lachase reaching into Utah and purchasing access to TWT's product, there would have been no demand for a refund, no copyright infringement and no false and disparaging statements in an attempt to destroy the Plaintiffs." (Opp'n at 9). As previously explained, to demonstrate that Mr. Lachase purposefully directed his alleged activities at Utah, Plaintiffs need to show that Mr. Lachase "deliberately directed [his] message *at an audience in the forum state and* intended harm to the plaintiff occurring primarily or particularly in the forum state." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 845 (10th Cir. 2020) (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) (emphasis added)); *see also Dudnikov*, 514 F.3d at 1077 ("[T]hey must establish . . . not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state*." (Emphasis in original)).

The alleged conduct at issue includes posting on social media and providing copies of TWT's materials to third parties, while the alleged contacts with Utah include purchasing an online service from an entity licensed in Utah. Plaintiffs must demonstrate some facts showing that Mr. Lachase intentionally targeted his alleged actions to an audience within Utah – that Plaintiffs allegedly felt harm from Mr. Lachase's alleged actions in Utah is insufficient to establish personal jurisdiction as a matter of law. *XMission*, 955 F.3d at 845–46; *Shrader*, 633 F.3d at 1245. Plaintiffs rely heavily on the suggestion that Mr. Lachase knew that Plaintiff Hubbs resided in Utah and argue that because he knew Plaintiff lived in Utah, he necessarily targeted his speech into Utah when he posted on social media about Plaintiffs' business and when he allegedly provided copies of Plaintiffs' materials to other parties (who do not live in Utah). That is not the law.

Plaintiffs provide no facts that, if true, demonstrate that Mr. Lachase's alleged statements or actions were intended to, calculated to, and did reach a Utah audience. Moreover, Plaintiffs provide no other facts or arguments to connect the alleged actions with the alleged contacts with the forum. Mr. Lachase's statements on social media were, at best, targeted at his own followers, and there is no evidence or allegation that any of his followers reside in Utah. Further, the recipients of the content allegedly provided by Mr. Lachase reside in Florida, Texas, and Ohio. (First Am. Compl. (ECF 8), ¶¶ 4-6). Accordingly, there are no allegations to demonstrate that Mr. Lachase directed his comments or actions at an audience in Utah. This area of personal jurisdiction law would be thrown on its head if a Plaintiff could prove that a Defendant's actions were purposely directed at a jurisdiction simply because the Plaintiff's good or service originated in that jurisdiction and Defendant's alleged actions concerned that good or service.

Plaintiffs' reliance on the "harmful effects" test from *Calder v. Jones* and *Dudnikov* is misplaced for similar reasons. Under this test, Plaintiffs must show (1) the defendant committed an intentional act, (2) the defendant's action was expressly aimed at the forum state, and (3) the defendant knew that the brunt of the injury would be felt in the forum state. *Dudnikov*, 514 F.3d at 1072. Notably, Plaintiffs urge this Court to collapse the second and third elements, arguing that the second element is automatically satisfied if the third element is satisfied.

The Court in *Dudnikov* acknowledged that given the difficulty of applying "purposeful direction" analysis in different legal contexts, "courts have often retreated to analogizing individual cases to discrete Supreme Court personal jurisdiction precedents." *Dudnikov*, 514 F.3d at 1071. "This process has led to the development of several frameworks that focus the analysis in certain recurring types of situations to help determine whether purposeful direction has been established." *XMission*, 955 F.3d at 841. The Tenth Circuit has published a number of cases, including *XMission* and *Shrader*, describing the applicable standard for whether a defendant's purportedly defamatory statements made on the internet against a forum state resident were "expressly aimed at the forum state." *See, e.g.*, *id*; *Shrader*, 633 F.3d at 1241.

The *Dudnikov* Court explained that, when analyzing whether a defendant's action is "expressly aimed" at the forum state, courts focus "more on a defendant's intentions—where was the "focal point" of its purposive efforts." *Id.* at 1075. Like the *XMission* analysis described above, the "focal point" analysis considers the audience of the alleged statements; specifically, whether the forum state was the focal point of the alleged statements, either in terms of audience or content; whether the alleged statements were posted on a neutral internet site or site with certain ties to the forum state; and whether the plaintiff's business was specific to the forum state or enjoyed a

8

nationwide audience. *Shrader*, 633 F.3d. at 1245. Plaintiffs cannot make a showing on any of these factors. Assuming Mr. Lachase posted the alleged statements on his social media, namely Facebook and/or Instagram, there is no evidence or allegation that those statements concern Utah or were directed to an audience in Utah. Further, given that Facebook is a worldwide social media platform, Plaintiffs cannot show any specific ties between Mr. Lachase's public Facebook page and Utah. *See Temple v. Ghadimi*, No. 22-CV-02261-EFM-TJJ, 2023 WL 372018, at *5 (D. Kan. Jan. 24, 2023). Finally, while Plaintiff Hubbs resides in Utah and Plaintiff TWT is registered in Utah, Plaintiffs have not alleged that the majority, or any, of its customers or potential customers reside in Utah. Indeed, the only allegations concerning Plaintiffs' potential and actual customers demonstrate those customers reside in Florida, Texas, and Ohio. (First Am. Compl. (ECF 8), ¶¶ 4-6).

Where Plaintiffs failed to meet their burden in demonstrating that Mr. Lachase's alleged conduct and actions were directed at an audience in Utah, Plaintiffs cannot connect Mr. Lachase's alleged actions to his contacts with this jurisdiction. Accordingly, this Court should decline to exercise personal jurisdiction against Mr. Lachase, and should dismiss him from the case pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

### B. Where the Causes of Action Against Mr. Lachase Arise Out of Different Facts, this Court Cannot Exercise Pendent Personal Jurisdiction.

Plaintiffs argue that even if the Court cannot exercise personal jurisdiction over Mr. Lachase on some of Plaintiffs' causes of action, it should exercise pendent jurisdiction over the remaining claims. (Opp'n at 12–13). "In essence, once a district court has personal jurisdiction over a defendant for one claim, it may "piggyback" onto that claim other claims over which it lacks independent personal jurisdiction, *provided that all the claims arise from the same facts as*

*the claim over which it has proper personal jurisdiction.*" *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002) (emphasis added). Further, even if claims arise out of the same facts, district courts have discretion over whether to exercise jurisdiction over personal pendent jurisdiction claims. *Id.* at 1273.

Plaintiffs allege three causes of action against Mr. Lachase: copyright infringement, libel and slander ("defamation"), and tortious interference with economic relations ("tortious interference"). The facts underlying Plaintiffs' copyright infringement cause of action are that Mr. Lachase made and distributed copies of Plaintiffs' allegedly copyrighted materials, while the facts underlying Plaintiffs' defamation and tortious interference causes of action are that Mr. Lachase posted libelous comments about Plaintiffs on social media. While some of the background facts relevant to the causes of action overlap, namely the allegations that Mr. Lachase purchased and downloaded Plaintiffs' software and later allegedly sought to "harm" Plaintiffs, the allegations related to Mr. Lachase's alleged conduct relevant to the causes of action do not arise from the same facts. Indeed, Plaintiffs cannot prove their defamation or tortious interference claims by alleging that Mr. Lachase copied and distributed Plaintiffs' copyrighted work, nor can Plaintiffs prove their copyright infringement cause of action by alleging that Mr. Lachase posted libelous statements about them on social media. Accordingly, even if the Court determined that its exercise of personal jurisdiction over Plaintiffs' copyright infringement claim was proper, the operative facts supporting that claim are entirely separate from the operative facts supporting the defamation and tortious interference claims. Similarly, if the Court determined that its exercise of personal jurisdiction over Plaintiffs' defamation and/or tortious interference claims was proper, the operative facts supporting those causes of action are distinct from the facts supporting the

copyright infringement cause of action. Accordingly, the exercise of pendent jurisdiction would be improper in either circumstance.

### C. The FAC Fails to State a Claim Against Mr. Lachase for Defamation.

#### 1. Conclusory Allegations, even if Couched as Factual Allegations, are Insufficient to Withstand a Motion to Dismiss.

Plaintiffs contend that their allegations, despite being conclusory and bereft of detail, are sufficient to state a claim for relief for defamation. Rather than explain how the allegations are sufficient, Plaintiffs simply refer the Court to general case law regarding the sufficiency of allegations. But as *Iqbal*, *Twombly*, and their progeny make clear, a plaintiff cannot simply allege the legal elements of the cause of action and substitute in the defendant's name. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiffs assert as sufficiently factual such allegations as, "Each of the defendants has posted false and defamatory statements about Plaintiffs" and "Defendants have made statements of fact against TWT and Hubbs, including, but not limited to, that TWT is a scam and that Hubbs is a scammer and engaged in fraud." *See* Opp'n, p.16. But as explained in Mr. Lachase's motion to dismiss, *see* Mot., pp.12–13, the Court should disregard such allegations as conclusory, and should consider only *factual* allegations. "When evaluating whether a complaint states a claim, we 'disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable.'" *Collins v. Schustermann*, 677 F. App'x 462, 465 (10th Cir. 2017) (quoting *Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015). "A conclusory allegation is one that asserts the final and ultimate conclusion which the court is to make in deciding the case for [the alleging party]." *See* Edward A. Hartnett, *Taming* Twombly,

11

*Even After* Iqbal, 158 U. Pa. L.Rev. 473 (2010). For example, in *Iqbal*, the Supreme Court held that allegations that "Ashcroft was the principal architect of" the complained-of policy and that "Mueller was instrumental in adopting and executing it" were "nothing more than a formulaic recitation of the elements of a constitutional discrimination claim." *Iqbal*, 556 U.S. at 681.

Here, the allegations against Mr. Lachase are largely recitals of the elements of a defamation claim. Rather than showing the Court what they claim was said, Plaintiffs simply state that Mr. Lachase "posted false and defamatory statements" and vaguely describe them as "accusing [Plaintiffs] of being fraudulent and selling a scam." *See* Opp'n, p.16. For the purposes of the motion to dismiss, the Court should disregard such general claims and focus only on the allegations that specifically identify concrete statements Mr. Lachase allegedly made. *See Brokers' Choice v. NBC Universal*, 861 F.3d 1081, 1105 (10th Cir. 2017) ("[A] defamation complaint cannot couch allegations of falsity in vague, conclusory terms."); *see also Tannerite Sports, LLC v. NBCUniversal News Group*, 864 F.3d 236, 247 (2d Cir. 2017) ("[W]hen falsity is an element of a state defamation claim, federal courts have required plaintiffs to plead facts that, if proven, would allow a reasonable person to consider the statement false.").

Moreover, Plaintiffs cannot simply lump all of the defendants into a single category and make sweeping general allegations about the category of defendants. *See Glenn v. First Nat'l Bank*, 868 F.2d 368, 371 (10th Cir. 1989) ("The law recognizes a significant difference between notice pleading and 'shotgun' pleading."); *Greathouse v. Rosa*, No.1:20-cv-00554-KWR-KK, 2021 WL 3618179, *1 (D.N.M. Aug. 16, 2021) (dismissing case where the plaintiff failed to "'explain what each defendant did to him; when the defendant did it; how the defendant's action harmed him; and what specific legal right the plaintiff believes the defendant violated.'" (Cleaned up) (Quoting

*Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007))). To give fair notice to each defendant, the complaint should "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations[.]" *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008); *see also Simpson v. P.F. Chang's China Bistro, Inc.*, No.20-cv-02519-CMA-STV, 2021 WL 8153748, *4 (D. Colo. Nov. 4, 2021) (holding that a complaint "fail[ed] provide sufficient detail to inform the defendants of the actual grounds of the claim against them" where "nearly every allegation refers to 'Defendants' generally, without specifying '*who* is alleged to have done *what*.'" (Quoting *Robbins*, 519 F.3d at 1250)).

### 2. Mr. Lachase's Alleged Statements are Constitutionally Protected Statements of Opinion.

Not all of Plaintiffs' allegations are purely conclusory. Paragraph 29 of the FAC alleged Mr. Lachase made six specific statements (though it did not specify where, when, or to whom the statements were made). Mr. Lachase explained in his motion to dismiss that these six statements were nondefamatory, either because they were truthful statements of intent or because they were constitutionally protected statements of opinion. *See* Mot., pp.16–19.

Plaintiffs do not make any argument to the contrary. Plaintiffs therefore appear to concede that the six specific statements were nondefamatory. In any event, Plaintiffs do not give the Court any reasoned basis in law or fact to conclude otherwise. Accordingly, the Court should recognize that the six statements are incapable of sustaining a defamatory meaning for the purposes of deciding the motion to dismiss.

### D. **The FAC Fails to State a Claim Against Mr. Lachase for Tortious Interference.**

4883-0691-2897.v2

Notably, the tortious interference claim is brought by Plaintiff TWT alone. Plaintiff TWT cursorily contends that it has stated a claim for tortious interference. *See* Opp'n, pp.17–18. But it does not engage with the arguments made by Mr. Lachase in the motion to dismiss. Instead, it attempts to reinvent this cause of action without amending the FAC.

In the FAC, TWT alleged that all of the defendants "made false and disparaging comments about the training and TWT and Hubbs in an effort to cause people not to purchase TWT's product[.]" *See* FAC, ¶ 73, Dkt.8. TWT alleged that Defendants had thereby "interfered with the prospective economic relationship between TWT and its potential customers for the sole purpose of harming TWT[.]" *Id.* ¶ 74. And TWT asserted that "Defendants used improper means to interfere with TWT's potential economic relations, including false claims that TWT was promoting a scam or a fraud and that the owner of TWT was a con artist." *Id.* ¶ 75.

In the motion to dismiss, Mr. Lachase pointed out that these allegations generally failed to identify the improper means each defendant used, and to the extent that he was accused of publishing his opinions about Plaintiffs, the expression of his opinions was constitutionally protected speech and therefore not an improper means. *See* Mot., pp.19–21. Because that expression of opinion was not contrary to law, it could not support a tortious interference claim. *See, e.g.*, *SCO Group, Inc. v. IBM Corp.*, 879 F.3d 1062, 1084 (10th Cir. 2018) (holding that, under Utah law, an "attempt merely to convince third parties not to deal with a plaintiff" did not amount to tortious interference because "the intentional-interference tort ought not sweep within its scope 'efforts to persuade others not to . . . deal with certain entities.'" (Quoting *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 303 (Utah 1982))).

4883-0691-2897.v2

In its opposition, TWT attempts to reinvent this cause of action. For the first time, it now identifies the improper means as "illegally copying the video series and placing it on the internet." *See* Opp'n, pp.17–18. And it seeks leave of Court to "add additional detail" to this essentially brand-new basis for liability. *See id.*

To avoid prejudice, the Court should hold TWT to the four corners of the already amended complaint and deny further amendment, whether formally by filing a new complaint or informally by recognizing a new basis for liability not actually pled in the FAC. *See, e.g.*, *Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013). (explaining that Courts "consider only the facts alleged in plaintiffs' Amended Complaint in reviewing [a motion to dismiss]."). *See also Amquip Corp. v. Admiral Ins. Co.*, 231 F.R.D. 197. 199 (E.D. Pa. 2005) ("A party is unduly prejudiced if amendment would cause surprise, result in additional discovery, or add cost in the preparation to defend against new facts or theories.").

Moreover, TWT's arguments regarding tortious interference are unavailing. TWT first argues that Mr. Lachase's alleged intentional interference was "clearly shown . . . as it was Lachase's goal to 'destroy Michael Hubbs.'" *See* Opp'n, p.17. But even assuming that this was Mr. Lachase's intended goal, it does not by itself prove that he performed any act that interfered with TWT. To analogize, a *mens rea* without an accompanying *actus reus* is meaningless. TWT must allege facts that, if taken as true, would show that Mr. Lachase actually interfered with TWT's prospective economic relations, not just that he wanted to harm Mr. Hubbs.

Similarly, TWT has made no effort to connect anything Mr. Lachase did to an actual injury suffered by TWT. As pleaded, TWT's cause of action focused entirely on how the supposedly defamatory statements interfered with TWT's contractual relations. *See* FAC, ¶¶ 68–75. But

15

having conceded that the statements were nondefamatory, *see supra*, TWT now points to the alleged illegal copying of its videos. *See* Opp'n, pp.17–18. But TWT has not alleged that it lost any prospective sales *because of* the statements or the alleged copying. Instead, it simply asserts that it lost $200,000 in sales. TWT's failure to allege a causative link between the alleged improper conduct and the alleged injury is fatal. *See, e.g.*, *SCO Group*, 879 F.3d at 1083 (Tenth Circuit holding that, under Utah law, "it does not follow clearly . . . that any improper conduct directed toward the public and the general market would be actionable as a claim for tortious interference whenever . . . business relationships suffer as a result of improper conduct").

To establish a causative link, the Court would have to jump over several gaps in TWT's pleading. The Court would have to pencil into the FAC the allegations that, because one of the series of videos was viewed 19 times, each view was a unique person, and that each unique person would have otherwise paid $10,000+ for access to the videos but did not do so because Mr. Lachase said that Mr. Hubbs (not TWT) was a "scam." Not only would such a causative link be implausible, TWT itself does not even allege it.

As explained in the motion to dismiss, TWT has not pleaded facts that, if taken as true, would show that Mr. Lachase intentionally interfered with TWT's contractual relations, that Mr. Lachase used improper means, or that TWT has lost sales as a result.

## CONCLUSION

For the foregoing reasons, and as more fully explained in the motion to dismiss, this Court should dismiss all causes of action against Mr. Lachase for lack of personal jurisdiction and should dismiss Plaintiffs' causes of action for defamation and tortious interference against Mr. Lachase for failing to sufficiently state claims upon which relief may be granted.

DATED October 3, 2023.

/s/ *Hannah Ector*
Adam Bondy
Hannah Ector
Mindy Kidd
PARSONS BEHLE & LATIMER

Attorneys for Defendant Charlton Lachase

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of October, 2023, I caused a true and correct copy of the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANT CHARLTON LACHASE** to be delivered by the method indicated below to the following:

Randall B. Bateman
BATEMAN IP
299 S. Main St., Suite 1300
Salt Lake City, UT 84111
rbb@batemanip.com; mail@batemanip.com

☒ E-file Notification
☐ USPS mail, first class postage prepaid
☐ Facsimile Transmission
☐ Email
☐ Overnight Mail

Andra Rush
34 Carlitos Way
St. Augustine, FL 32092
mrsandrarush@gmail.com

☒ E-file Notification
☐ USPS mail, first class postage prepaid
☐ Facsimile Transmission
☒ Email
☐ Overnight Mail

Brian Hertneky
108 Chelmsford Dr.
Aurora, OH 44202
hertneky30@gmail.com

☒ E-file Notification
☐ USPS mail, first class postage prepaid
☐ Facsimile Transmission
☒ Email
☐ Overnight Mail

Steven Duhon
3801 W. Spring Creek Pkwy, Apt. 2122
Plano, TX 75023

☐ E-file Notification
☒ USPS mail, first class postage prepaid
☐ Facsimile Transmission
☐ Email
☐ Overnight Mail

*/s/ Kim Gillespie*
Parsons Behle & Latimer