Adam Bondy, USB #14423
Hannah Ector, USB #17980
Mindy Kidd, USB #18032
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
abondy@parsonsbehle.com
hector@parsonsbehle.com
mkidd@parsonsbehle.com
ecf@parsonsbehle.com
*Attorneys for Defendant Charlton Lachase*
Limited Appearance

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE WIZARD TRADES, LLC; and MICHAEL HUBBS, <br><br> Plaintiffs, <br><br> vs. <br><br> CHARLTON LACHASE, ANDRA RUSH, STEVEN DUHON, and BRIAN HERTNEKY, <br><br> Defendant. | **MOTION TO DISMISS DEFENDANT CHARLTON LACHASE** <br><br> Case No. 2:23-cv-00207-DAO <br><br> Magistrate Judge Daphne A. Oberg |

Pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Charlton Lachase ("**Mr. Lachase**"), by and through undersigned counsel, hereby moves the Court to dismiss Plaintiffs' claims against him contained in Plaintiffs' Second Amended Complaint, Dkt. 69.

### REQUESTED RELIEF AND GROUNDS THEREFOR

Defendant Charlton Lachase asks this Court to dismiss the claims against him due to a lack of personal jurisdiction. Given that Mr. Lachase, a resident of Florida, did not purposefully

4876-8627-1376.v1

direct any of the alleged actions towards the state of Utah, this Court cannot exercise jurisdiction over him. Accordingly, the case against him should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

In the alternative, Mr. Lachase moves this Court to dismiss the defamation and tortious interference claims against him with prejudice for failure to state a claim. Plaintiffs' Second Amended Complaint ("**SAC**") is replete with conclusory and speculative allegations about "Defendants" without differentiating or specifying which Defendant allegedly performed which act. Further, the few arguably non-conclusory allegations made by Plaintiffs concern alleged statements that either constitute opinion or other constitutionally protected speech. Plaintiffs therefore fail to state a claim for defamation and tortious interference against Mr. Lachase and should not be allowed to proceed on those causes of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF RELEVANT FACTS

1. Mr. Lachase is a resident of Fort Pierce, Florida. *See* SAC, ¶ 3, Dkt. 69.

2. Plaintiff The Wizard Trades ("**TWT**") is a Utah entity that provides instructional video courses online. *See id.*, ¶¶ 11, 12, 14.

3. Plaintiffs' Complaint alleges that this Court has personal jurisdiction over the defendants "as the acts alleged herein occurred in this District and Defendants have directed their comments into this state." *Id.*, ¶ 9.

4. Plaintiffs allege that Mr. Lachase "has made numerous claims accusing TWT and its owner Michael Hubbs of being fraudulent and selling a scam" and that "Lachase and the other

defendants have set out to damage the reputation of Hubbs and TWT by claiming that Hubbs and TWT are engaging in fraud and that they are scamming people." *Id.*, ¶¶ 28, 38.

5.      Plaintiffs allege that Mr. Lachase "stated that: 'I'm ready to go into SYL (fb group with tons of people) to share….to warn everyone Michael Hubbs' course for $6,500…he's very manipulative… You're right that Michael Hubbs in a SCAM. He's a very bad person. I will get in SYL to try and destroy Michael Hubbs.'" *See id.*, ¶ 29.

6.      Plaintiffs allege that Mr. Lachase "further stated: 'I will share everything of his course materials from lesson 1 to lesson 21 FREE FOR EVERYONE, EVERYTHING FREE hahahaha. I haven't signed any contract, means I can do anything… hahaha. Freedom of speech.'" *See id.*, ¶ 30.

7.      In support of their cause of action for Defamation/Libel and Slander/Defamation Per Se, Plaintiffs allege that Lachase's "statements about TWT and Hubbs were targeted to cause damages to Plaintiffs in Utah." *Id.*, ¶ 70.

## ARGUMENT

### I.      RULE 12(B)(2) – LACK OF JURISDICTION OVER MR. LACHASE

Plaintiffs assert that the Court has personal jurisdiction over Defendants. *See* S*AC*, ¶ 9. To support this assertion, Plaintiffs claim that "the acts alleged herein occurred in this District and Defendants have directed their comments into this state" and that Lachase's "statements about TWT and Hubbs were targeted to cause damages to Plaintiffs in Utah." *See id*., ¶¶ 9; 70. These conclusory allegations are insufficient to carry Plaintiffs' burden of establishing that the Court can properly exercise jurisdiction over Defendants and should be disregarded. Because the SAC lacks any facts suggesting that the Court may exercise personal jurisdiction over Mr.

Lachase, dismissal is appropriate pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

A.    **<u>Standard</u>**

"The Due Process Clause of the Fourteenth Amendment constrains a state's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283. "A federal court may not exercise personal jurisdiction over an out-of-state defendant unless (1) an applicable statute authorizes service of process on that defendant and (2) the exercise of statutory jurisdiction comports with constitutional due process." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020). Here, the applicable statute is Utah's long-arm statute, which provides that the "provisions of this part . . . should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code § 78B-3-201(3). "The two-step analysis thus collapses here into a single due-process inquiry." *XMission*, 955 F.3d at 839. Under the Fourteenth Amendment's Due Process Clause, a court may only exercise jurisdiction over defendants who have sufficient "minimum contacts" with the forum state. *Id.* Put another way, "the contacts with the forum State must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

"The plaintiff has the burden of establishing personal jurisdiction." *Id.* In other words, "[t]he plaintiff carries the burden of showing the propriety of the court's exercise of personal jurisdiction over a defendant." *Buckhannon v. Monarch Life Ins. Co.*, No.94-1071, 1995 WL 43593, *1 (10th Cir. Feb. 2, 1995) (unpublished). "However, only the well pled facts of

plaintiff's complaint, as distinguished from mere conclusory allegations must be accepted as true." *Id.* (citing *Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987)).

**B.   Plaintiffs Fail to Demonstrate That This Court Has General or Specific Jurisdiction over Mr. Lachase.**

"A defendant's contacts with the forum state may give rise to two variants of personal jurisdiction: general or specific." *Dental Dynamics, LLC v. Jolly Dental Group, LLC*, 946 F.3d 1223, 1229 n.2 (10th Cir. 2020). "General purpose jurisdiction means a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state." *Id.* Additionally, it is possible, in certain circumstances, for a federal law to establish nationwide jurisdiction, so long as the exercise of such jurisdiction complies with the constitutional requirement of due process. *See, e.g.*, *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229, 1233 (10th Cir. 2006). But here, none of these methods for establishing jurisdiction have been satisfied.

**1.   Because Mr. Lachase Resides in Florida, this Court Cannot Exercise General Jurisdiction Over Him.**

A defendant is subject to general jurisdiction within a state "if its contacts with the State are so 'continuous and systematic' that [it] is essentially at home in the State." *XMission*, 955 F.3d at 840 (quoting *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017)). With regard to an individual, as here, "[t]he court only has general jurisdiction over an individual domiciled in the state." *Celtig, LLC v. Patey*, 347 F. Supp. 3d 976, 982 (D. Utah 2018). Plaintiffs concede that "Defendant Charlton Lachase ('Lachase'), is an individual residing in Fort Pierce, Florida." *See* SAC, ¶ 3. Further, Plaintiffs have not alleged that Lachase has any

5

contacts with Utah, much less "continuous and systematic" contacts with the State. *See generally*, *id.* Accordingly, under Plaintiffs' own allegations, Mr. Lachase is not subject to general jurisdiction in the District of Utah. *XMission*, 955 F.3d at 840.

### 2.   Because Mr. Lachase Has Not Purposefully Directed Any Activities at Utah, this Court Cannot Exercise Specific Jurisdiction Over Him.

"In the absence of general jurisdiction, the court turns to an analysis of specific jurisdiction, the first element of which is the minimum contacts analysis." *Celtig*, 347 F. Supp. 3d at 983. "A court may find the necessary minimum contacts if: (1) the defendant 'purposefully directed its activities at residents of the forum state,' and (2) the plaintiff's injuries 'arise out of the defendant's forum-related activities.'" *Id.* (quoting *Old Republic Ins. Co.*, 877 F.3d at 904).

### a.   The Complaint Lacks Factual Allegations Linking Mr. Lachase to Utah.

Plaintiffs have not set forth any factual allegations that would establish that Mr. Lachase, a resident of Florida, subjected himself to the specific jurisdiction of this Court by purposefully directing his activities into Utah. Instead, Plaintiffs simply state that "the acts alleged herein occurred in this District and Defendants have directed their comments into this state." *See* SAC, ¶ 9.

Such conclusory allegations "do not serve to fulfill plaintiff's burden of showing that the court could properly exercise personal jurisdiction over defendant." *See Buckhannon*, 1995 WL 43593, *2. In *Buckhannon*, the plaintiff alleged only that its causes of action "concern the transaction of insurance business within the state of Colorado" and that the defendant perpetuated "false assertions and accusations" about the plaintiff's insurance claims. *Id.* *1. The district court concluded that these allegations were insufficient to show that the court had specific personal jurisdiction over the defendant, and the court therefore dismissed the case. *Id.*

On appeal, the Tenth Circuit Court of Appeals affirmed, explaining that the plaintiff's allegations were "mere conclusory allegations" which should not be considered true for the purposes of a motion to dismiss. *Id.* *2.

Similarly, the federal court for the District of Utah considered a case where the plaintiff alleged that "a 'substantial part of the events or omissions giving rise to this claim occurred in Utah.'" *See Carver v. H.R. Plus*, 992 F. Supp. 1293, 1294 (D. Utah 1998). The court ruled that this allegation "merely asserts a conclusory statement" which was not factual and would not be accepted as true in motion-to-dismiss proceedings. *Id.* The court also noted that the plaintiff's "factual statements [were] unsupported and unsubstantiated." *Id.* Accordingly, the court concluded that the plaintiff had "not established specific jurisdiction over" the defendant, and therefore dismissed the case. *Id.*

These cases control the outcome here. Plaintiffs' complaint does not set forth factual allegations supporting the legal conclusions that "the acts alleged herein occurred in this District and Defendants have directed their comments into this state." *See* SAC, ¶ 9. For example, Plaintiffs do not allege that Lachase contacted Plaintiffs' customers in Utah or otherwise focused his alleged statements to a Utah audience. Because Plaintiffs have not identified any acts in Utah by Mr. Lachase, this allegation of the Complaint is not entitled to the presumption of truth. *See Buckhannon*, 1995 WL 43593, *2; *Carver*, 992 F. Supp. at 1294. The Court should disregard these conclusory allegations for the purposes of the motion to dismiss.

Plaintiffs also assert that the defendants intended to cause financial harm or damage to "Hubbs in Utah," to "Plaintiffs in Utah," and/or to "Hubbs and TWT in Utah." *See* SAC, ¶¶ 58, 70, 96. The Court should also disregard these speculative assertions, as Plaintiffs provide no

facts to support them. *See Carver*, 992 F. Supp. at 1294 (finding that where plaintiff's "other factual statements [were] unsupported and unsubstantiated," "Plaintiff simply has not established personal jurisdiction over H.R."); *see also Ten Mile Indus. Park*, 810 F.2d at 1524 ("[O]nly the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.").

      b.    <u>Even If Taken as True, the Allegations in Plaintiffs' Complaint Would Not Establish Minimum Contacts.</u>

Even if the Court were to accept as true the allegations that the defendants caused harm to Plaintiffs in Utah, that would not establish the minimum contacts necessary for the Court to exercise specific personal jurisdiction over Mr. Lachase.

As noted above, a defendant has minimum contacts with a forum state when the defendant has purposefully directed its activities into the forum state and thereby effectively consented to the state's jurisdiction. *XMission*, 955 F.3d at 840 ("'Specific jurisdiction is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.'" (Quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008))). "Purposeful direction (sometimes referred to as purposeful availment) requires that a defendant have deliberately engaged in significant activities within the forum State or deliberately directed its activities at the forum State, so that it has manifestly availed itself of the privilege of conducting business there." *Id.* (citation, ellipsis, brackets, and internal quotation marks omitted). "The requirement ensures that a defendant will not be subject to the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated contacts; the unilateral activities of another party or a third person; or the mere foreseeability that

its actions may cause injury in that jurisdiction." *Id.* (citations and internal quotation marks omitted). Instead, "a defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over [the defendant] can be described as fair and just." *Dudnikov*, 514 F.3d at 1070.

Here, there are no factual allegations that Mr. Lachase "deliberately engaged in significant activities within the forum State." *See id.* At best, the SAC suggests that the alleged harm was suffered within Utah. *See* SAC, ¶¶ 58, 70, 96 (alleging defendants caused financial harm to "Hubbs in Utah, to "Plaintiffs in Utah," and to "Hubbs and TWT in Utah"). But the mere happenstance that the alleged harm occurred in Utah is insufficient to subject the defendants to specific personal jurisdiction in Utah. Instead, to demonstrate that Mr. Lachase purposefully directed his alleged activities at Utah, Plaintiffs need to show that Mr. Lachase "deliberately directed [his] message *at an audience in the forum state* and intended harm to the plaintiff occurring primarily or particularly in the forum state." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 845 (10th Cir. 2020) (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) (emphasis added)); *see also Dudnikov*, 514 F.3d at 1077 ("[T]hey must establish . . . not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state.*" (Emphasis in original)). Crucially, the plaintiff must show that the defendant intentionally targeted the forum state.

In *XMission*, the Tenth Circuit Court of Appeals determined that the defendant's acts of wrongfully sending thousands of emails to Utah customers did not subject the defendant to specific personal jurisdiction in Utah, because there was no evidence that the defendant

deliberately targeted Utah residents or even knew that any of the recipients were in Utah. *See XMission*, 955 F.3d at 845–46 (further noting that "[g]eneral knowledge that a message will have a broad circulation does not suffice"). Even though the alleged harms from the defendant's conduct were suffered in Utah, there was no evidence that defendant had taken steps to target its actions into Utah. *See id.*; *see also Alfwear, Inc. v. IBKUL UBHOT Ltd.*, No.2:21-cv-00698-DBB-JCB, 2022 WL 3705483, at *5 (D. Utah Aug. 26, 2022) (summarizing *XMission*). Absent a showing that an out-of-state defendant intentionally targeted its message or advertising at an audience within Utah, a federal court in Utah cannot properly exercise personal jurisdiction over the defendant.

Nor is it enough that a defendant could reasonably foresee that injury might be suffered in the forum. In *World-Wide Volkswagen*, the United States Supreme Court rejected the notion that Oklahoma could exercise personal jurisdiction over the manufacturer of a car that caught fire while transiting through the state from New York to Arizona. *World-Wide Volkswagen*, 444 U.S. at 295. The Supreme Court noted that there was no evidence that the manufacturer engaged in significant Oklahoma activity:

> Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either though salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market.

*Id.* at 295. In short, the only arguable basis for Oklahoma to exercise personal jurisdiction was the fact that the harm occurred in Oklahoma. The Supreme Court recognized that while it was certainly foreseeable that the vehicle at issue might enter Oklahoma, "foreseeability alone has

never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Id.* at 296. The foreseeability that harm might arise in the forum state therefore does not create minimum contacts. *Id.* Consequently, even though it was foreseeable that the harm could arise in Oklahoma and notwithstanding that the harm actually did arise in Oklahoma, the Supreme Court concluded that the car manufacturer did not have sufficient minimum contacts with Oklahoma to subject it to personal jurisdiction. *Id.* at 296–99.

The Court in *Dudnikov* acknowledged that given the difficulty of applying "purposeful direction" analysis in different legal contexts, "courts have often retreated to analogizing individual cases to discrete Supreme Court personal jurisdiction precedents." *Dudnikov*, 514 F.3d at 1071. "This process has led to the development of several frameworks that focus the analysis in certain recurring types of situations to help determine whether purposeful direction has been established." *XMission*, 955 F.3d at 841. The Tenth Circuit has published a number of cases, including *XMission* and *Shrader*, describing the applicable standard for whether a defendant's purportedly defamatory statements made on the internet against a forum state resident were "expressly aimed at the forum state." *See, e.g.*, *id*; *Shrader*, 633 F.3d at 1241; *Dudnikov*, 514 F.3d at 1075.

The *Dudnikov* Court explained that, when analyzing whether a defendant's action is "expressly aimed" at the forum state, courts focus "more on a defendant's intentions—where was the "focal point" of its purposive efforts." *Id.* at 1075. Like the *XMission* analysis described above, the "focal point" analysis considers the audience of the alleged statements; specifically, whether the forum state was the focal point of the alleged statements, either in terms of audience or content; whether the alleged statements were posted on a neutral internet site or site with

certain ties to the forum state; and whether the plaintiff's business was specific to the forum state or enjoyed a nationwide audience. *Shrader*, 633 F.3d. at 1245. Plaintiffs cannot make a showing on any of these factors.

Assuming Mr. Lachase posted the alleged statements on his social media, such as Facebook, there is no allegation that those statements concern Utah or were directed to an audience in Utah. Further, given that Facebook is a worldwide social media platform, Plaintiffs cannot show any specific ties between Mr. Lachase's public Facebook page and Utah. *See Temple v. Ghadimi*, No. 22-CV-02261-EFM-TJJ, 2023 WL 372018, at *5 (D. Kan. Jan. 24, 2023). And while Plaintiff Hubbs resides in Utah and Plaintiff TWT is registered in Utah, Plaintiffs have not alleged that the majority, or any, of their customers or potential customers reside in Utah. Indeed, the only allegations concerning Plaintiffs' potential and actual customers demonstrate those customers reside in Florida, Texas, and Ohio. SAC, ¶¶ 4-6. Moreover, Plaintiffs provide no other facts to connect the alleged actions with Lachase's alleged contacts with the forum. Mr. Lachase's statements on social media were, at best, targeted at his own followers, and there is no allegation that any, let alone a significant fraction, of his followers reside in Utah. Accordingly, there are no allegations to demonstrate that Mr. Lachase directed his comments or actions at an audience in Utah. This area of personal jurisdiction law would be thrown on its head if a plaintiff could prove that a defendant's actions were purposely directed at a jurisdiction simply because the plaintiff's good or service originated in that jurisdiction and the defendant's alleged actions concerned that good or service. Accordingly, this Court cannot exercise personal jurisdiction over Lachase.

## II.   RULE 12(B)(6) – FAILURE TO STATE A CLAIM

In the alternative, Mr. Lachase moves the Court for dismissal for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on Plaintiffs' claims for defamation and tortious interference with prospective economic relations.

### A.   Standard

"[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions[.]'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "In practice, the court applies Rule 12(b)(6) by 'first discard[ing] allegations in the complaint that are 'legal conclusions' or 'threadbare' recitals of the elements of a cause of action, supported by mere conclusory statements.' Next, the court 'accepts as true the remaining, well-pleaded (that is, plausible, non-conclusory, and non-speculative) factual allegations and construe[s] them in the light most favorable to the plaintiff.'" *Brundidge v. Brim Properties LLC*, No.

219CV00291RJSJCB, 2020 WL 4347274, at \*3 (D. Utah July 29, 2020) (quoting *Soto for Estate of Jimenez v. Bd. of Cty. Comm'rs of Caddo Cty.*, 748 F. App'x 790, 793 (10th Cir. 2018)).

**B.   Application to Libel and Slander Cause of Action**

Plaintiffs allege that all four defendants have defamed them by making statements to the effect that Plaintiff TWT is a scam, that Plaintiff Hubbs is a scammer and engaged in fraud, and that Plaintiff Hubbs is a con artist. *See* 28 U.S.C. § 4101(1); SAC, ¶¶ 63-64. "A federal court exercising supplemental jurisdiction over state-law claims applies the substantive law . . . of the forum state." *See Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1224 (D. Utah 2018) (citation and internal quotation marks omitted) (applying Utah law to defamation claims brought in copyright case). "To state a claim for defamation, a plaintiff must show that the defendant published the statements concerning him or her, that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage." *See id.* at 1229–30 (D. Utah 2018) (brackets, citation, and internal quotation marks omitted).

**1.   Plaintiffs' Conclusory Allegations Must Be Disregarded.**

Plaintiffs' defamation cause of action relies almost entirely on conclusory allegations that lack the necessary factual underpinnings to raise them above mere speculation. For example:

> 38. Additionally, Lachase and the other defendants have set out to damage the reputation of Hubbs and TWT by claiming that Hubbs and TWT are engaging in fraud and that they are scamming people.

> 39. Each of the defendants has posted false and defamatory statements about Plaintiffs in an effort to discourage people from dealing with Plaintiffs.

> . . .

14

63. Defendants have made statements of fact against TWT and Hubbs, including, but not limited to, that TWT is a scam and that Hubbs is a scammer and engaged in fraud.

64. Defendants have also accused Hubbs of being a con artist.

*See* SAC, ¶¶ 38; 39; 63; 64. The Court cannot infer from such speculative allegations that the statements were in fact published to any audience whatsoever. Nor can it infer that unrecited statements were false or damaging. These allegations do not identify which of the four defendants made each claimed statement, do not recite the content of any statement, do not give details as to where any statement was made or to whom it was made, and do not claim any time period in which any statement was made. Because these allegations lack details as to who, what, where, and when, the allegations do not contain sufficient facts to "permit the court to infer more than the mere possibility of misconduct." *See Iqbal*, 556 U.S. at 679. Consequently, they should be disregarded for purposes of the Rule 12(b)(6) motion to dismiss. *See id.*

Instead, the Court should consider only the allegations against Mr. Lachase that include more than mere speculation about his supposed defamatory statements. There is only one allegation that is even arguably factual:

29. Lachase further stated that: "I'm ready to go into SYL (fb group with tons of people) to share….to warn everyone that Michael Hubbs' course for $6,500…he's very manipulative…You're right that Michael Hubbs is a SCAM. He's a very bad person. I will get in SYL to try and destroy Michael Hubbs."

*See* SAC, ¶ 29. This does not identify to whom the alleged statement was made, in what medium or location it was made, or when it was made.

Moreover, Plaintiffs cannot simply lump all of the defendants into a single category and make sweeping general allegations about the category of defendants. *See Glenn v. First Nat'l Bank*, 868 F.2d 368, 371 (10th Cir. 1989) ("The law recognizes a significant difference between

notice pleading and 'shotgun' pleading."); *Greathouse v. Rosa*, No.1:20-cv-00554-KWR-KK, 2021 WL 3618179, \*1 (D.N.M. Aug. 16, 2021) (dismissing case where the plaintiff failed to "'explain what each defendant did to him; when the defendant did it; how the defendant's action harmed him; and what specific legal right the plaintiff believes the defendant violated.'" (Cleaned up) (Quoting *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007))). To give fair notice to each defendant, the complaint should "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations[.]" *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008); *see also Simpson v. P.F. Chang's China Bistro, Inc.*, No.20-cv-02519-CMA-STV, 2021 WL 8153748, \*4 (D. Colo. Nov. 4, 2021) (holding that a complaint "fail[ed] provide sufficient detail to inform the defendants of the actual grounds of the claim against them" where "nearly every allegation refers to 'Defendants' generally, without specifying '*who* is alleged to have done *what*.'" (Quoting *Robbins*, 519 F.3d at 1250)). Absent this information, the Court should disregard Paragraph 29 along with the other speculative allegations. But even if it considers Paragraph 29 in its analysis, the allegations in Paragraph 29 are plainly insufficient to state a cause of action for defamation, as explained below.

## 2. The Alleged Statements Ascribed to Mr. Lachase Are Constitutionally Protected Statements of Opinion.

Both the United States Constitution and the Utah Constitution protect free speech by limiting liability for defamation. *See Nunes*, 299 F. Supp. 3d at 1230; *Jensen v. Sawyers*, 130 P.3d 325, 336 (Utah 2005) ("Defamation claims always reside in the shadow of the First Amendment."); *West v. Thomson Newspapers*, 872 P.2d 999, 1015 (Utah 1994) (holding that the

Utah Constitution limits liability for defamation). In particular, "[b]ecause expressions of pure opinion fuel the marketplace of ideas and because such expressions are incapable of being verified, they cannot serve as the basis for defamation liability." *See Nunes*, 299 F. Supp. 3d at 1230 (citation and internal quotation marks omitted). "Whether a statement is capable of sustaining a defamatory meaning is a question of law that may be answered by a district court before submitting the case to a jury." *Id.* at 1233. In doing so, courts do not resolve ambiguities in the nonmoving party's favor; instead, they "conduct a context-driven assessment of the alleged defamatory statement and reach an independent conclusion about the statement's susceptibility to a defamatory interpretation without indulging inferences in favor of the nonmoving party." *Id.* (citation and internal quotation marks omitted).

Paragraph 29 of the SAC lumps several statements together, alleging that Mr. Lachase wrote or said them at some unspecified point. The statements are:

1. "I'm ready to go into SYL (fb group with tons of people) to share…."
2. "I'm ready to go into SYL (fb group with tons of people) . . . to warn everyone that Michael Hubbs' course for $6,500…"
3. "he's very manipulative…"
4. "You're right that Michael Hubbs is a SCAM."
5. "He's a very bad person."
6. "I will get in SYL to try and destroy Michael Hubbs."

*See* SAC, ¶ 29.

Statements 1, 2, and 6 express no facts about Plaintiffs. They merely inform the audience, if any, of what Mr. Lachase supposedly planned to do. Plaintiffs have not pleaded any allegations from which the Court could infer that Statements 1, 2, or 6 were false or defamatory, or that their publication caused damage. *See Nunes*, 299 F. Supp. 3d at 1229–30 (listing falsity, defamatory

content, and resulting damage as requisite elements for a defamation claim under Utah law). These statements cannot support a cause of action for defamation.

In Statements 3 and 5, Mr. Lachase allegedly claimed that Plaintiff Hubbs was "very manipulative" and was "a very bad person." These statements are not "objectively verifiable" or capable of being proven true or false. *See id.* at 1230. "Such comments about the quality of" a plaintiff's work, "her character traits, or her conduct are opinions that cannot be proven true or false." *See id*. Because they are opinions, they cannot support a claim for defamation. *See id.*

The last statement, Statement 4, alleges that Mr. Lachase stated that Plaintiff Hubbs "is a SCAM." When read in context, Statement 4 is nothing more than Mr. Lachase's opinion that an unknown third-party's assessment of Plaintiff Hubbs was correct. *See* SAC, ¶ 29 ("You're right that Michael Hubbs is a SCAM."). It is not defamatory to express agreement with another person's opinion. But even if considered as Mr. Lachase's independent statement that Plaintiff Hubbs was a scam, any reasonable audience would have understood Statement 4 as nothing more than rhetorical exaggeration, incapable of sustaining a defamatory meaning. *See Nunes*, 299 F. Supp. 3d at 1241 ("In determining whether [a defendant's] statements constitute protected opinions or potentially actionable assertions of fact, the court must look to the content and context of the messages.").

The Utah Supreme Court has surveyed cases in which the expressions of negative opinions have been claimed as defamatory. *See West v. Thomson Newspapers*, 872 P.2d 999, 1010 (Utah 1994). For example, in *Wecht v. PG Publishing Co.*, 510 A.2d 769, 773 (Pa. Super. 1986), a Pennsylvania appellate court affirmed the trial court's determination that "cartoons and accompanying editorial comments showing a political figure acting in a coarse, vile, obscene,

and abusive manner and implying that he was an insensitive, malicious, hypocritical person who takes delight in the misfortune of others" were not defamatory, because any reasonable reader would understand that they were nothing more than humorous exaggerations of the makers' opinions as to the person's undesirable traits. *See West*, 872 P.2d at 1010 (citation and internal quotation marks omitted). Similarly, referring to a plaintiff as a "hatchet man" was not defamatory because it was used to express the opinion that the plaintiff was akin to a "scalawag, rake, or scoundrel, none of which are defamatory." *See id.* (summarizing *Miskovsky v. Oklahoma Publ. Co.*, 654 P.2d 587 (Okla. 1982)) (internal quotation marks omitted). And in *Greenbelt Coop. Publ. Ass'n v. Bresler*, 398 U.S. 6 (1970), the United States Supreme Court held that referring to a plaintiff's negotiating position as "blackmail" was not defamatory because "even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the plaintiff's] negotiation position extremely unreasonable." *Id.* at 14.

More recently, the Utah Court of Appeals considered a case in which the defendant posted an online review describing the plaintiff as "crooks" that "will take full advantage of you! Run from them!" *See Westmont Residential LLC v. Buttars*, 340 P.3d 183, 185 (Utah Ct. App. 2014). The court concluded that, while "crooks" could carry a provable or disprovable criminal connotation, the context of an online review meant that any reader would have understood the term to be "juvenile name-calling" and an expression of mere opinion. *See id.* at 189 (noting that statements are non-defamatory when they "cannot 'reasonably be interpreted as stating actual facts." (quoting *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988) (brackets omitted))).

This Court has also addressed a similar situation. *See Nunes*, 299 F. Supp. 3d 1216 (D. Utah 2018). In *Nunes*, the defendant commented on the plaintiff's GoFundMe webpage that "This is fraud!"; "This is a scam!"; "This 'fund me' has got to be a hoax or scam."; and "This is a scam people!" *See id.* at 1230. This Court noted that none of these comments alleged facts that would constitute a fraud or scam. *Id.* at 1231. There was simply "no indication that [the defendant] imputed criminal conduct to [the plaintiff] by referring to [the plaintiff's GoFundme] fundraising as a 'fraud,' 'hoax,' and 'scam.'" *Id.* at 1231. This Court determined that the defendant's use of such terms in online commentary "would have been understood to be no more than rhetorical hyperbole," and therefore concluded that "these opinions cannot support defamation liability." *Id.* at 1232.

Like the "fraud," "hoax," and "scam" statements made in *Nunes*, the alleged accusation that Plaintiff Hubbs was "a SCAM" is rhetorical hyperbole. No reasonable reader would infer from these statements that Mr. Lachase was imputing specific criminal conduct. Consequently, Statement 4, like the other statements in Paragraph 29, cannot support a claim of defamation.[1]

Because Plaintiffs have not identified any defamatory statements made by Mr. Lachase, and instead rely on conclusory allegations (e.g., "Each of the defendants has posted false and defamatory statements about Plaintiffs in an effort to discourage people from dealing with Plaintiffs," *see* SAC, ¶ 39), they have failed to state a claim for defamation against him upon which relief may be granted. It follows that the Court should dismiss this count against Mr. Lachase pursuant to Rule 12(b)(6).

---

[1] Other statements alleged to have been republished by Lachase, including the statement that Hubbs is a "con artist," constitute rhetorical hyperbole for the same reasons discussed *supra*.

C.      **Application to the Tortious Interference Cause of Action**

Plaintiff TWT alleges that all four defendants tortiously interfered with its prospective economic relations. *See* SAC, ¶¶ 78-87. "A federal court exercising supplemental jurisdiction over state-law claims applies the substantive law . . . of the forum state. *See Nunes*, 299 F. Supp. 3d at 1224 (citation and internal quotation marks omitted). Under Utah law, to state a claim of tortious interference with prospective economic relations, a plaintiff must establish the following elements: "(1) that the defendant intentionally interfered with the plaintiff's . . . potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff." *Eldridge v. Johndrow*, 345 P.3d 553, 565 (Utah 2015) (citation and internal quotation marks omitted). To qualify as improper means, an action must be "contrary to law, such as violations of statutes, regulations, or recognized common-law rules," including "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood." *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1084 (10th Cir. 2018) (citation omitted). Plaintiff's tortious interference claim fails on all three elements.

1.      **Plaintiffs Fail to Adequately Plead Intentional Interference.**

TWT's claim of tortious interference does not adequately plead that Mr. Lachase intentionally interfered with TWT's potential economic relations. This is because the supposedly interfering statements are either conclusory allegations or constitutionally protected speech—neither of which are actionable.

As explained above, this Court should not accept conclusory allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4876-8627-1376.v1

TWT's tortious interference cause of action relies on conclusory allegations that are unsupported by factual evidence. For example:

> 82. TWT has prospective economic relationships with those in the deaf community who are looking to learn more about on-line trading.
>
> . . .
>
> 85. Defendants interfered with the prospective economic relationship between TWT and its potential customers for the sole purpose of harming TWT and Hubbs.
>
> 86. Defendants used improper means to interfere with TWT's potential economic relations, including misrepresenting TWT's content and false claims that TWT was promoting a scam or a fraud and that the owner of TWT was a con artist.

SAC, ¶¶ 82; 85; 86. To the extent Plaintiffs may be referring to Defendants' alleged statements, Plaintiffs do not identify which of the four defendants made each claimed statement, do not recite the content of any statement, do not give details as to where any statement was made or to whom it was made, and do not claim any time period in which any statement was made. Because these allegations lack details as to who, what, where, and when, the allegations do not contain sufficient facts to "permit the court to infer more than the mere possibility of misconduct." *See Iqbal*, 556 U.S. at 679. Thus, the Court should reject all such conclusory allegations when evaluating this Rule 12(b)(6) motion to dismiss. *See id.* Once the Court rejects the conclusory allegations and the allegations regarding constitutionally protected speech (discussed in the next section), the Court should recognize that TWT did not adequately plead a claim that Mr. Lachase interfered with TWT's prospective business relations.

### 2. Mr. Lachase's Alleged Statements Were Not Defamatory, and Therefore Plaintiffs Cannot Demonstrate that Lachase Acted with Improper Means.

The only arguably nonconclusory factual allegations that TWT made regarding this cause of action were based on Defendants' allegedly disparaging comments. What TWT labels as

22

tortious interference is actually a repackaging of the Plaintiffs' libel and slander claims, which are deficient as a matter of law. The allegedly disparaging comments lack the required specificity and do not qualify as improper means. For example, Plaintiffs claim:

> 83. Defendants were aware of TWT's on-line training and made false and disparaging comments about the training and TWT and Hubbs in an effort to cause people not to purchase TWT's product and to destroy the reputation of Hubbs.
>
> . . .
>
> 86. Defendants used improper means to interfere with TWT's potential economic relations, including false claims that TWT was promoting a scam or a fraud and that the owner of TWT was a con artist.

FAC, ¶¶ 83; 86. As fully discussed earlier, negative statements in online reviews that do not specifically allege the elements of a crime are properly classified as constitutionally protected opinion statements. *See Nunes*, 299 F. Supp. 3d at 1230–32. Because the allegedly disparaging comments are constitutionally protected speech and because TWT failed to allege any other nonconclusory facts in support of its tortious interference claim, TWT failed to prove that Mr. Lachase acted via improper means.

### 3. Plaintiffs Fail to Allege How They Were Injured by Mr. Lachase's Alleged Comments.

TWT does not assert a causal link between Mr. Lachase's alleged actions and any specific injury to TWT. TWT does not allege that it suffered decreased sales because of Mr. Lachase's alleged action, and it does not allege that Mr. Lachase drove away any prospective or potential customers. For the Court to find that Mr. Lachase's alleged interference caused any injury to TWT, the Court would have to invent an injury that TWT did not allege, and any such invention would be purely speculative.

4876-8627-1376.v1

In summary, TWT's unsupported assertions fall into two categories: (1) conclusory allegations that the Court need not consider; and (2) unactionable allegations that Defendants expressed negative opinions about TWT, which are protected by the First Amendment. *See* SAC, ¶¶ 78-87. Thus, even if all facts are weighed in the light most favorable to TWT, TWT fails to prove that Mr. Lachase interfered with TWT's economic prospects using improper means. *See Eldridge*, 345 P.3d at 565. Accordingly, this Court should dismiss this cause of action against Mr. Lachase.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss all causes of action against Mr. Lachase for lack of personal jurisdiction. In the alternative, this Court should dismiss Plaintiffs' causes of action for defamation and tortious interference against Mr. Lachase for failing to sufficiently state claims upon which relief may be granted.

DATED December 26, 2023.

/s/ *Hannah Ector*
Adam Bondy
Hannah Ector
Mindy Kidd
PARSONS BEHLE & LATIMER

Attorneys for Defendant Charlton Lachase

4876-8627-1376.v1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 26th day of December, 2023, I caused a true and correct copy of the foregoing **MOTION TO DISMISS DEFENDANT CHARLTON LACHASE** to be delivered via CM/ECF filing to the following:

Randall B. Bateman
BATEMAN IP
299 S. Main St., Suite 1300
Salt Lake City, UT 84111
rbb@batemanip.com; mail@batemanip.com

Andra Rush
34 Carlitos Way
St. Augustine, FL 32092
mrsandrarush@gmail.com

Brian Hertneky
108 Chelmsford Dr.
Aurora, OH 44202
hertneky30@gmail.com

Steven Duhon
3801 W. Spring Creek Pkwy, Apt. 2122
Plano, TX 75023

*/s/ Hannah Ector*
Parsons Behle & Latimer